Mr. Trump, when you're ready. Thank you, Chief Judge Gregory. May it please the Court, William Trump for Appellant Jeffrey Sterling. The government made certain choices about how to charge and try this case. Those choices had consequences. For example, despite fighting tooth and nail, including in this Court, to compel Risen to testify regarding where he received national defense information, the government ultimately made a strategic and policy choice not to pursue Risen's testimony, despite this Court's holding that Risen could be compelled to testify. Now, that choice left gaping holes in the government's proof of venue in the Eastern District of Virginia. The government also chose not to offer evidence regarding when, in particular, the CNN email was deleted between April and July of 2006, instead pointing to the mere fact that it vanished at some point in that time frame. That choice left some gaping holes in the government's obstruction proof. Now, those issues are explained in our briefs. In my limited time today, I wanted to focus on how the government chose to fill those holes. Namely, the government chose to offer wildly prejudicial and impermissible character evidence under Rule 404B. In an effort to help prove venue and to color the jury's view of Mr. Sterling, the government offered under Rule 404B four classified CIA documents that were seized from Sterling's Missouri residence in 2006. And I'd like to just pause for a moment and talk about how these documents were actually offered at trial, because I think it's important. Now, the government really wanted to use these documents for obvious reasons, but it didn't want to declassify them. So these documents, at least three of them, came in under the so-called silent witness rule. Now, unlike every other document, as a consequence of the government's choice, these documents, in particular, were treated with extreme security measures, befitting of the nuclear codes themselves. They were cloaked in red cover sheets. They were emblazoned with the word secret. Hard copies were handed out to the jury, not published like every other exhibit, and then promptly retrieved like some high-stakes show and tell. Mr. Trunk, are you suggesting that the documents weren't properly classified? Oh, no, I'm not suggesting that, Judge Diaz. Well, if that's the case, then why is that unusual, that the documents would be treated in the way you've just described? I think what's unusual here, Judge Diaz, is not that the documents were classified in the first instance, and it's certainly the government's prerogative to make that choice, whether they're classified or unclassified. What's unusual here is that the government offered the documents in a way that was, I think, impermissible under Rule 404B, and because of the unique circumstance in which they were offered, that is, they were classified and not declassified like every other exhibit at trial, the defense was hamstrung in its ability to defuse these documents at trial. It couldn't, for example, explain to the jury how these documents were patently irrelevant on their face or explain how the content of the document was banal and unrelated to the classified program that was really at issue. That wasn't the issue in this case. The question was your client's intent with respect to what he did for the conduct that was part of the indictments. So the nature of the documents, it doesn't seem to me to be at all relevant. The question is does that tend to show his intent with respect to what the government alleged at trial, and classification, it seems to me, has nothing to do with that, or for that matter, the substance of the documents. Well, Judge Diaz, on the intent point, I think it's beyond dispute that intent is an element of the underlying offense of willful retention. But I think as this Court has held and as the Fifth Circuit and the Second Circuit and the Ninth Circuit have held, simply because the underlying offense contains an intent element does not make intent actually relevant at trial. Instead, what the Court must look to for purposes of Rule 404B is whether in light of the government's evidence, in light of the theory of the defense, the defendant's actual intent is relevant. And here we would submit that it never was. This was not a case about whether Sterling willfully retained the cover letter. It was whether he did at all. We don't have a blanket rule that suggests that if the defendant doesn't contest intent, the government is prohibited from presenting evidence on the element of the charge nonetheless, right? So you agree with that? That's right, Judge Diaz. It's not a blanket rule. But this Court has cautioned that in circumstances where the government is offering Rule 404B evidence for the putative purpose of demonstrating intent or state of mind, the Court must peel back a couple of layers and see whether intent is actually at issue in that case. In Hernandez, in the Sanders case, their intent was plainly relevant, at least on the face of the statute. In one instance, the government needed to prove that Ms. Hernandez possessed drugs with the intent to distribute them. In the Sanders case, the defendant was charged with assault with the intent to do bodily harm. But in each of those cases, this Court held that intent was not truly at issue, given the theory of the defense. We have cases that suggest the opposite, that is, that even when intent is not at issue, unless there's a stipulation, I suppose, the government shouldn't be hamstrung in the way it presents its case, subject to the limitations of 404B and 403, the overarching issue of prejudice versus relevance. So I guess that's where you need to go, it seems to me, is because the evidence came in. Your client didn't stipulate to intent. The government alleged that it was relevant with respect to intent. So, first of all, why isn't it relevant? And second, where's the proper balance here? Well, Judge Diaz, I think here, you're absolutely right that Mr. Sterling did not stipulate to his intent. However, his theory of defense all along was that he never did it. And therefore, if the government proved through its circumstantial evidence that Sterling did, in fact, retain the cover letter, I think the element of intent could be inferred under the circumstances. But here, even assuming there were some probative value to this evidence, it was eclipsed by the prejudicial nature. And here, again, not only due to the silent witness rule, because I think perhaps through no fault of the government's, these documents came in under unique circumstances that put a spotlight on these documents and these documents in particular. These documents did not have a brief cameo at trial. They were a spectacle. And I think under those circumstances, and in particular, the fact that these documents did not have any bearing on the subject matter at issue here. They were tenuous and remote, as this Court said in the Johnson case. They were from the early 90s. For all we know, they had been in Sterling's possession for 15 years or more. The government offered no evidence with respect to how or where these documents were maintained. And I think here, with respect to the prejudicial element, this Court observed in the White case, among others, that the closeness of the case is clearly relevant to the element of the harmlessness of the 404B error. And here, confronted with no direct evidence of Sterling's guilt, the jury remained deadlocked well into its third day of deliberations. And what's more, in its closing statement, the prosecutor made repeated and inappropriate reference to these documents. As this Court said in the Madden case, that itself creates reversible harm. And despite what the government may say about its, despite the government's proffered intent. This is my fault for not remembering this, but was there an actual statement by the jury that they were deadlocked or they simply hadn't arrived at a decision? They were still deliberating. Well into the morning of the third day of deliberations, the jury sent a note to the judge saying that they could not reach agreement on several counts. And that's all we know from the state of the record. Now here, despite what the government may say about its purpose for offering these documents to establish Sterling's state of mind in retaining the Merlin cover letter, what the prosecutor said in his closing remarks on three separate occasions is that these documents go to demonstrate that Sterling's the type of guy who keeps CIA documents at his home. Three different times. Now I think consistent with the Madden case, those remarks which underscore documents that were already under a spotlight, comments that underscore an improper purpose for these documents, documents not the proper purpose proffered by the government, those remarks we submit drove the dagger home. And therefore, I think in light of the marginal, if any, relevance of these documents, in light of the silent witness rule and the spotlight that was shown on these documents, in light of the prosecutor's closing remarks, I think here the error under Rule 404B cannot be said to be harmless and the government cannot carry its burden on that point. Now, unless there are further questions on that, on the Rule 404B issue, I'd like to speak briefly about the... One question, Mr. Trump, in that regard. What, if anything, do you think you were able to do to diffuse that value of cross-examination once that 404B information came in? Anything you think you could do or did to diffuse the impact? Well, I think in the normal course, Chief Judge Gregory, the defense counsel has an opportunity... I don't mean in the normal course. I mean in this actual case. Were you able to diffuse it at all? Because, for example, in your response to Judge Diaz, I think what you were arguing is that it seemed like it was a dog and pony show, like this is top, top secret, and really were personnel records. Were you able to argue that? Not meaningfully, Chief Judge Gregory. Sterling's trial counsel was able to ask some superficial questions about the content of these documents, was able to adduce briefly, for example, that at least two of these documents had to do with rotary phones from the late 1980s. But at that point, the government counsel objected, and the objection was sustained, and that line of questioning was cut off. And so Sterling's counsel could go no further to establish for the jury that these documents really have nothing to do with what this case is about. So it was almost like, because I know those documents, you open them up originally, look at this, look at that, then close them, and then that kind of thing? That's exactly right, Chief Judge Gregory. The documents were circulated. The jury was impressed upon the jury that these documents are extremely sensitive. You can't breathe a word of them to anyone, including your families. Please give them back to us as soon as you're done with them. You didn't know whether it was like you said. I know you were quipping tongue-in-cheek, but whether it was a nuclear weapon plan or whether it was did the general eat potato chips one day? Really? You didn't know, really? Did you have a chance to go through them? I'm asking you, did you? Chief Judge Gregory, Sterling's trial counsel did not have a chance before the jury to establish that this was a case of potato chips and not nuclear codes. I just did it hypothetically, but the range is, as we know, in terms of what is confidential, it could be a lot of things. But here you didn't know, right? And then at the closing argument, they said, this is the kind of man who keeps these kinds of secrets, so he must have done this. That's basically what you're saying? That's exactly what the government impressed upon the jury, and that's precisely the propensity inference that Rule 404B is designed to forbid. That's all I have. Go on. I know you have other things. Go ahead. Just to round that off, Chief Judge Gregory, really, at the end of the day, the only evidence that the jury was allowed to hear about these documents was that they were extremely sensitive and that Sterling squirreled them away in his house. And we submit that that was exceedingly prejudicial under the circumstances and not at all what Rule 404B and its exceptions is designed to permit. Now, briefly on the venue instruction, I say I only have two minutes left, but I want to largely rest on our briefs, but I want to underscore that here the government's thin proof of venue was helped immensely by what was an erroneous, by all accounts, venue instruction. The district court's venue instruction, which allowed the jury to find venue in the Eastern District, so long as an act, any act, in furtherance of Sterling's crime occurred in the Eastern District. That simply lowered the bar below what the Supreme Court and this Court has held is necessary to establish venue. Now, the instruction would have been correct had Sterling been charged with conspiracy, but he was not. He was charged under the substantive provisions of Section 793. And accordingly, the government was required to prove that essential criminal conduct, that is the underlying transmission of national defense information, occurred in the Eastern District. That's not what the government proved, and that's not what the jury was invited to find. Now, for that very reason, the First Circuit in the Georgia Caracos case held that precisely this jury instruction was erroneous as a matter of law, precisely because it invited the jury, as the jury was invited to here, find venue based on preparatory conduct, not essential criminal conduct. So under the circumstances here, moments-long telephone calls, for example, loomed much larger. Sterling's mere resonance in and travel through the Eastern District could be a venue-sustaining act under the district court's erroneous instruction. Now, the government nevertheless defends the instruction here as consistent with this Court's decision in the Ebersole case. But we would submit that the government, like the district court, overlooks the important distinctions between this case and the Ebersole case. In Ebersole, the jury was not invited to find venue based on preparatory conduct. Rather, under the circumstances of that case and reading the instructions in their totality, the jury was invited to find, as it must, that essential criminal conduct occurred in the district. Now, this error was not harmless, we would submit, given the paucity of evidence to support venue in the Eastern District. But if we disagree with you with respect to that evidence and conclude that there was enough evidence to show, enough conduct-based evidence to show that all of the operative misconduct occurred in the proper venue, is the error then harmless, instructional error? No, Judge Diaz, I don't think so. I think the inquiry is slightly different. It's not whether the evidence otherwise would be sufficient to sustain venue, but instead whether the evidence taken as a whole could support a rational finding that there was not venue. And here we would submit, I see that my time is up, but we would submit that that standard is not met. I'd like to reserve the rest of my time for rebuttal. It's so reserved, Counsel. Thank you. Eric Olshan. Good morning, and may it please the Court. Eric Olshan on behalf of the United States. On appeal, Mr. Sterling does not challenge the jury's finding that he is guilty of disclosing disclosure of national defense information to the general public through the publication of State of War in 2006. His argument on appeal rests primarily on venue challenges. Mr. Trunk spent the bulk of his initial time before the panel arguing about 404B evidence, and so I will take a few minutes to start there. I believe a point that Judge Diaz made, which is supported in this Court's jurisprudence, is that the government has the freedom, and this is from the Queen case at 997, the government has the freedom to decide how it is going to prove every element of every charged offense. In the briefing on appeal, Mr. Sterling takes the position that intent was never an issue in this case. Well, that is a very convenient 2020 hindsight argument. But the reality at trial was Mr. Sterling did not stipulate to anything with respect to any of the elements of the crimes. Even in the Queen case where there was an offer of a conditional stipulation concerning intent, the Court said the government is not required to accept that. The government has the burden of proving beyond a reasonable doubt every element of every offense. And going into the trial in this case, although Mr. Sterling certainly made claims by his counsel that he was going to pursue a defense of I was not the leaker, that is not all he said. Within a couple of months in the lead-up to trial, he was proffering a potential expert who was going to come in and argue things that related to whether, in fact, classified program number one or the details in the book had anything to do with national defense information, which is a completely different element. At no point did he stipulate as to any of the elements. And the government does not have the luxury of knowing in the midst of trial exactly what will be at issue as trial concludes or how the defense is going to argue the case to the jury in summation. So the government's position with respect to this 404B evidence, which was properly admitted by the District Court, is that this was a very minor sliver of the government's case. Mr. Trunk tries to have it both ways. On the one hand, he describes these documents which, to Judge Gregory's point, were provided to the defense in discovery. They did know what the documents looked like, and they were litigated. And the government discussed redactions, something that Mr. Sterling actually opposed, I believe, because the record will show they believed redactions would make these documents look somehow more important than they were. But the reality is that the documents were related to, as the record shows, performance evaluation and then these three documents related to, among other things, the use of telephones when an employee is not at the CIA. Mr. Olson, let me ask you, how do you distinguish the Hernandez case? I mean, I get the fact that the government shouldn't be hamstrung in its order of proof, particularly where the defendant doesn't stipulate. But in Hernandez, admittedly not a national security case, a drug case, we said that that evidence of intent just went too far given that intent was never at issue. So how do we distinguish this case? I note for the Court that Hernandez was a 1992 decision. That predated the Court's opinion in Queen. In Queen, the Court noted this sort of contradictory nature of some of the Court's past cases on this 404B evidence and intent and noted that Hernandez was contradictory or was counter to other precedent in the Court's jurisprudence. And so I would highlight for the Court exactly what this Court did in Queen, which is to survey the landscape of 404B evidence and then hold in that case that the government, to quote the Court, has the burden of proving every element of the crime charged and must have the freedom to decide how to discharge that burden. I will note for the Court that the cases cited by Mr. Sterling on this issue are, for lack of a better term, simpler cases. We're talking about possession cases. We're talking about cases involving an assault. This was a case that was much more complicated than those cases. And so issues of intent were not as simple. But the upshot of Queen is that the government has that flexibility. And so I would argue that Hernandez is distinguishable both on its… Where do we draw the line with respect to intent versus propensity? Because obviously the latter is problematic. You're not allowed to do that. That's correct. I would direct the Court to the district court's limiting instructions. Well, I mean, those limiting instructions are well and good, but a jury faced with this evidence and faced with the description of the evidence as provided by Mr. Sterling's counsel about the sort of the mysterious nature of the documents and the way they were presented, the fact that the government honed in on this and hammered away at it, how far can an instruction go in that circumstance? The Court repeatedly, in this case, Your Honor, the instruction was more than sufficient. The Court made clear to the jury when these documents were coming in and at the conclusion of evidence in instructing the jury that the jury could draw no inferences based on these documents to prove that the defendant took some action on some other day, which is exactly the kind of limiting instruction the Court approved of in Queen. And so to answer Judge Diaz's question, I would submit that because these documents were submitted for an appropriate reason and the Court limited the jury's consideration of them to intent, and pattern is a basis for establishing intent. So an individual who has a pattern of conduct is a basis for establishing that on a particular day someone had the intent. I would highlight for the Court that although Mr. Sterling says that intent was never at issue, in his briefing, both his opening brief and his reply brief, he mentions that these other documents may have been kept by Mr. Sterling accidentally or that he had forgotten about them, which is exactly the same kind of issue you grapple with when a jury is deciding was retention willful. And so I would submit that the evidence was properly admitted, and when we talk about prejudice, just stepping back, this was a case involving top-secret compartmented information, compartmentalized information, involving the disclosure of a key national security program targeting the Iranians' nuclear program and the use of a human asset who was a Russian scientist to take the schematics of a fire set over to Vienna to leave for the Iranians. What's the point of this? It was a very important matter, so what does that mean in terms of using the 404B? As a matter of fact, I think it hurts you because you weren't using things of that ilk to show 10 years ago he retained those kind of documents. Instead, seemingly you took that and put it in that he must have done this. I mean, you're right. This was a very important case, clearly. I didn't mean to cut you off. I think everybody can see what you said that was given to the reporter is very important, the project. But the question, though, is how does this 404B, and you argued that they could leak if he did this 10 years ago, he must have, and you argued also gave these top secrets to someone, right? Did you argue that? Or closing argument? The argument was that that was not the argument. I know, but what was the argument? The argument was that this is somebody who has a pattern of retaining these sorts of documents in his residence. Beyond retention, you also said this is also the type of person who would disseminate this, didn't you not? No, Your Honor. Oh, just retention. No, Your Honor. Just retention. It didn't spill over at all to that he may have been the kind of person who would do this. Correct, Your Honor. The record reflects that summation and the government's argument on this particular point was very limited. The testimony that Mr. Trunk is referring to when these documents were submitted was toward the end of trial, and it was a very, very brief period. And so the notion that somehow the jury who has just heard weeks of testimony about a nuclear counterproliferation program, from scientists talking about a nuclear fire set and other individuals who are testifying behind a screen using just their first name and their last initial, would somehow be unduly, their passions would be inflamed so that they couldn't properly evaluate the evidence, particularly with the district court's limiting instructions, the government argues, is not a credible argument. And the 404B evidence was properly admitted. With my remaining time, if the Court doesn't have any other questions on the 404B issue, I'd like to turn to venue. The government's position, as articulated in our brief, is that the evidence in this case was more than sufficient to sustain a venue finding for all of the non-obstruction counts in this case. I'll start with the easiest, counts 1, 2, and 9. Those are the causation counts. Mr. Sterling was charged with causing the dissemination or the communication, transmission, and delivery of national defense information to the general public through the publication of State of War. On appeal, he does not challenge the jury's finding that he caused that. All he challenges is where that happened. The record in this case amply supports a preponderance finding that for each of those counts, 1, 2, and 9, 9 being the unauthorized conveyance count under Section 641, that that information was conveyed, transmitted, communicated to the general public in the Eastern District of Virginia. What date was it conveyed? The government offered records from Barnes & Noble reflecting that the book was sold, was shipped, and the book was sold beginning in the first part of January 2006. And so the way that the count was charged was as long as the jury could find by a preponderance that it was more likely than not that some member of the general public who was not cleared to know anything about Classified Program Number 1 received that information or was delivered to that information, that is sufficient for a venue finding in the Eastern District of Virginia. Also, you had venue anywhere in the United States where the book was sold. Potentially that is correct, Your Honor. And the government's position is there's not – That's the government's position, right? That's correct. There's nothing wrong with that here. And stepping back again, look at Mr. Sterling's motive. This is somebody who has a noted source relationship with Mr. – excuse me, with Mr. Risen. He is engaged in active litigation against the CIA. Mr. Risen, just the year before in 2002, wrote a profile on Mr. Sterling and his troubles with the CIA. Mr. Sterling's motive, as established by this case, was to harm the CIA and to do it in a way that had maximum exposure. He had already spoken to one – What was his motive for that? What was his motive? His motive was to harm the CIA. He felt like he had been mistreated by the CIA. The CIA had repeatedly rejected his monetary settlement demands in connection with litigation with the agency. You mean the race discrimination case he brought several years ago? He had a race discrimination case as well as he had separate litigation involving the agency's refusal to permit him to publish his memoirs in a way that he – the way that he wanted to write them. So he had multiple grievances against the agency. So all these things go to why you could have brought this case anywhere in the United States because he had a motive? Not necessarily, Your Honor. I thought that's what you're responding to. That's the question. This case would have brought – been appropriately brought or venued in any district where the communication, delivery, or transmission of the national defense information occurred. That is the essential conduct element or the essential conduct elements of 793 offenses or the conveyance for purposes of 641. That is all that is required for the venue analysis. It's a separate question whether he is substantively guilty as to those offenses. But, again, he does not challenge his substantive guilt. He just says that the evidence was insufficient to establish venue in the eastern district. So the government's position is for counts 1, 2, and 9. The record amply supports that venue was proper. Let me ask you a question. On the 793 D&E offenses, is possession, whether authorized or unauthorized, an essential conduct element of the offense? Can venue be established by showing that possession, whether authorized or unauthorized, was in the eastern district of Virginia? Your Honor, I believe the word that is used, and this is relevant for count 3, is just the word retention. That is retention of physical documents or other material is covered by 793 E. So the document counts involving the disclosure of the document as well as the retention are 793 E offenses. And I believe the operative verb is retention. And so the government's argument with respect to count 3 is that by a preponderance of the evidence and certainly reviewing the jury's venue finding under standard sufficiency review, there was sufficient evidence for the jury to conclude that it was more likely than not that he retained the Merlin letter at his home in Virginia. He, focusing on that count, he had been terminated by the CIA in, by January 1st of 2002, he lost all access to CIA. I'm looking at counts 1 and 2 just as an example. One is a violation of 793 D, which you have to prove authorized possession. 793 E is unauthorized possession. It seems to me you have to prove possession with authorized, unauthorized. And my question is, is that not an element of the offense? The government is not taking the position that that, for purposes of the venue analysis, that the unauthorized or authorized possession is an essential conduct element for purposes. You're not taking that position? Not in our papers, no, Your Honor. We have focused on the Actus Reis of, for purposes of those counts, the communication transmission delivery via state of war to the general public. Without a doubt, that happened in the Eastern District of Virginia. With respect to the retention count, the government's, the government's argument is that by this point, he had been fired by the CIA. He was unemployed, working on his memoirs, living in Herndon, Virginia. He could not have left the document where he first obtained it, which was in New York, because by that point, the CIA facility had been destroyed on 9-11, which is another fact he disclosed to a reporter. So that's the only place he could have left it in New York, because now it's gone. So that means no place else could have been left in New York. Because that building is gone, there was no other place in New York where the documents could have been left. That's what you're arguing? The question is whether the jury could have found, based on the evidence presented, that it was more likely than not that his retention occurred in the Eastern District of Virginia, not whether he could have possibly retained it somewhere else. They would have to speculate, wouldn't they? My goodness, that's a thin proof there. Oh, because where you worked in New York is no longer an operating building, when you moved to Virginia, you could not have left that anywhere in New York. That's your argument? That's really your argument? My argument is that that is an appropriate inference for this jury to draw, that by the time he is fired by the CIA, he has that document in the Eastern District of Virginia. And to put a finer point on that, if the court examines the timeline of his communications with Mr. Risen during this operative time, the end date for purposes of this argument is April 30th. That is when Mr. Risen says to Secretary Rice and George Tenet that he has seen a letter to the Iranians. So by that point, we know that he has the letter. During the lead-up to that meeting, he is in repeated phone contact with Mr. Sterling. They are exchanging at least one email. Mr. Sterling has gone to the Senate Select Committee on Intelligence just a few weeks earlier. Five days after that, on March 10th, 2003, he's communicating about the CNN article. That, in addition to the evidence regarding his termination and the fact that he was unemployed in the Eastern District of Virginia, there's no evidence in the record that he had some storage facility or he had some other job. He was unemployed. The jury could have reasonably inferred from that evidence, by a preponderance, that venue was appropriate for the retention count as to count three. What about the transmission count? Because you've charged him with retention, so obviously you need to show something else beyond that. What's the government's theory with respect to transmission? Is the court's question focused on count four or five? Five. Five is Mr. Sterling's transmission or communication of the letter itself to James Risen. Based on the reasonable inference that he was in possession or retention of that, had retained that document in the Eastern District of Virginia, the government's argument is that that transmission, wherever he is taking the document, whether he's going somewhere else in the Eastern District of Virginia or whether he's going to Maryland or the District of Columbia to provide that letter to Mr. Risen, which is later published verbatim in State of War, that transmission commences in the Eastern District of Virginia. And so in that respect, it's no different than if Mr. Sterling had decided, instead of driving it or taking the Metro to give it to Mr. Sterling, I'm going to put it in a UPS package and have it picked up at my home. The defense characterizes that as preparatory action. How do you distinguish what you're describing from mere preparation to commit offense? For purposes of transmission, I would focus on the definition. This is in our brief at 27. It's cause to go or be conveyed to another person or place. And so the government's argument is that a fair reading of transmission means that the defendant's conduct, with respect to his transmission of that document to Mr. Risen, properly can be viewed for venue finding as having commenced in the Eastern District of Virginia. The court's instruction on this is perfectly consistent with the instruction in Ebersole. There it was the same district court. The district court knew the instruction was an appropriate instruction for continuing offenses that can be begun in one district and completed in another district. And that language is consistent with the essential conduct element test of Bowens, where that case, Bowens, was not a continuing offense case. And so by the time you get to Ebersole and Engle, the court has to instruct the jury on the appropriate principle for conduct that can span districts. And this court approved that language for conduct that can span districts. And so the government- It's not a continuing crime as to either you gave it to him or you didn't. And if you did, you did it at a specific time and place. It's not a conspiracy case. I suppose you could say the retention, maybe, as long as you're still retaining it as a continuing crime. But as to transmission, you either gave it to him or you didn't. And if you did, you did it at a time and a place. That's not a continuing crime. I see that. I'm out of time. I answered the court's question. And when you answer this, too, when he buys stamps, is that part of the continuation, too, or is that preparation? If, for example, he was mailing it, when you purchase the stamps, is that part of it, too? Go ahead. Your Honor, the government's position is that communication, transmission, the operative verbs in 793 contemplates conduct that can span districts. For example, by reference to or analogy to the wire fraud or mail fraud statutes, those are offenses where that conduct, the execution of those schemes, can occur across district lines. So if I pick up the phone and I call somebody in the Eastern District of Virginia and I'm in the Western District of Virginia, that is a continuing offense. Just like if Mr. Risen picked up the phone and talked to Mr. Sterling while one was in Maryland and the other was in the Eastern District of Virginia, and they communicated about the substance of classified program number one, that would have been appropriate. And on that point, I would just direct the court to JA-2806, which was a chart that the government submitted to the jury of emails between the two. One of the emails indicates from Mr. Sterling, excuse me, Mr. Risen to Mr. Sterling in 2004, I want to call today. I am trying to write the story. I need your phone number again. So the question is, could a reasonable juror, and this is for the transmission or communication in count four, for example, have inferred that knowing that in 2004 Mr. Sterling is saying or Mr. Risen is saying, I want to try to write the story, can I have your phone number again? Could they have reasonably concluded that on one of these phone calls in 2003, that's exactly what they did? And based on the timeline of what was occurring at the time and the transmission of the CNN article, Mr. Risen or Mr. Sterling's appearance at the Senate Select Committee on Intelligence and the subsequent contact between Risen and the CIA, that was a reasonable inference. Those are inferences upon inferences. The fact is they just had a conversation, and you just read it. It had nothing to do with passing. You said, I want to write a story. I want to finish my story. What was his story? Do we know from your evidence? We do know because in the next year the book was published. There's no evidence here that Mr. Risen was writing some other story about. Okay, but is everything in his story classified? The story that the reporter wrote, is everything classified in there? No. Not everything. Well, then how do you know what part of the story he was contributing when they talked on the phone? He said, I need to finish my story. It could be, for example, you know, I need to know where you were born. I mean, what kind of, some background. Where you were married. Okay, well, I'll give you that. That doesn't mean, that's inference on top of inference. Your nan said, well, he had to have taken her to Virginia. He must have talked about this. Where's the evidence of the content that he gave them secrets? May I answer the question? Yes, sure. I see it somewhat differently. I think because this court has repeatedly said, as has every court, that venue is something that can be established by circumstantial evidence. There is ample record evidence to establish that this transmission or communication of information, even by phone, involved the disclosure of national defense information. Mr. Trunk has made much of the fact that not much can be said in a short period of time. I am three minutes over my time before the court. If I were to be quiet for the next 50 seconds, it would feel like an eternity. The government did not have to establish, or the jury did not have to find, that all of the information contained in Chapter 9 of State of War was communicated on a particular phone call. They just needed to decide whether it was more likely than not that on one of these calls, Mr. Sterling said, by the way, I was the case officer for, for example, counterproliferation operation targeting Iran. In fact, that's the substance of the Iranian nuclear program is the substance of the CNN article. So the government, the record here, amply supports the venue finding as to each of the counts. And I see that my time is well up, and I thank the panel for their time. Thank you. Mr. Trunk, you have some time reserved. Thank you, Your Honor. May it please the Court. Just briefly, Mr. Olshan observed that under the Queen case, the 404B evidence might well have been admissible here to establish Mr. Sterling's intent, because he never offered to conditionally stipulate his intent. But I would just submit that Mr. Sterling was indicted in 2000, five years before the trial. Everyone, including the government, knew what his theory of defense was. I'll point to this Court's decision in Johnson in footnote 7. The Court rejected the argument that because the defendant later chose to testify and denied some of the relevant acts, that he thereby put his conduct at issue. This Court observed that the error occurred well before that, and so too here. Whether Sterling ultimately decided to testify or conditionally stipulate or anything else, it doesn't change the fact that when this error occurred, everyone knew that Sterling's intent was never truly at issue here. And nor are we trying to have it both ways, as Mr. Olshan observed. The government offered some summaries of these sensitive documents that were even more prejudicial than the original documents, as the District Court held. We would submit that it's the government that's trying to have it both ways. If the government wishes to offer irrelevant and prejudicial character evidence, it should at least declassify that evidence so that the defendant can mount a proper defense. The limiting instruction here does not save the day either. The limiting instruction in the Hernandez case was exemplary, as this Court observed. And in the Johnson case, this Court said that the, quote, meager protection offered by a limiting instruction cannot salvage 404B evidence that was impermissible in the first instance. Mr. Olshan also observed that this case was very sensitive. It had to do with a Russian spy and covert operations and nuclear weapons. And, Chief Judge Gregory, you're exactly right that that cuts against the government because despite all of the sensitive material, the covert operations, the Russian spy, the only three documents in this case that were so sensitive that the jury couldn't talk about them to their families were the three documents that were offered that were seized from Sterling's residence. Mr. Olshan also observed that the jury might well have wondered whether Sterling possessed the requisite willfulness in retaining Merlin's cover letter. I would just point to this Court's necessity decisions, the Leidy case, for example. A separate prong of 404B is not only must the evidence be relevant, but it also must be necessary given the government's other evidence. Under the circumstances, is this evidence really additive? And I would submit here that it would have been a physical impossibility for Mr. Sterling to have retained this cover letter, given it to Rising, and yet done so without the requisite willfulness. The willfulness, the argument that the government propounds as to Sterling's intent or state of mind, we would submit is a Trojan horse. Everyone knew the government's true purpose in offering these documents. Judge Diaz, I just want to underscore a point that we were discussing earlier, that the harmlessness of the venue point is not judged by whether the evidence is sufficient in the record to sustain venue, but whether the evidence is such that the jury might have been misled. And we would submit that here, given the erroneous instruction and given the fact that numerous acts in furtherance of the crime occurred in the Eastern District of Virginia and elsewhere, given the boundless definition of the term act in furtherance of, it is exceedingly likely that the jury here was misled. Judge Traxler, I wanted to respond to a question that you raised regarding whether the possession of the national defense information could be part of the actus reus here. And I think the government is exactly right to concede that point, that this is not part of the actus reus. Instead, the possession of the national defense information is something that we would call a circumstance. No, it's not an element of the offense. It's a circumstance element of the offense, Judge Traxler. It is an element of the offense. Excuse me? It is or it isn't an element of the offense. The government either has to prove it or they don't. So which is, in your opinion? Judge Traxler, I think it's a circumstance element of the offense. So the government would need to prove it. That question can be answered yes or no. I mean, it's an element or it's not an element. The government has to prove it or they don't have to prove it. The government does need to prove that the defendant here, Mr. Sterling, did possess the national defense information in the first instance. Okay. Go ahead. Chief Judge Gregory, you're exactly right that the government's argument on the retention count is speculative. Mr. Sterling initiated his discrimination suit in May of 2000. Before he moved from New York to Virginia, the very discrimination suit that Risen would later write an article about. And the government has offered no evidence to suggest that Sterling transmitted national defense information, the cover letter, in particular to Risen after he moved to Virginia as opposed to before. As Chief Judge Gregory points out, this is inference on top of inference. And I think just pointing to the Strain case and the Evans case, the proof of venue there was overwhelming by comparison, but because the jury was invited to draw these inferences without any grounding in fact, the courts there held that the proof of venue was lacking. And just finally, I want to underscore just how lethal the government's summation was here. I'm reading from JA 2230. This is what the government told the jury. This is a man who keeps CIA documents at his home. Thank you, Your Honor. Thank you very much. Mr. Trunk, the court knows that you're a court opponent, and I just want to say that we give you a special thanks for that. We couldn't do our job without you and other lawyers who take on these cases, and we appreciate it very much. Also, though, Mr. Olshan, you're able representation of the United States. We'll come down, greet counsel, and proceed to our next case.
judges: Roger L. Gregory, William B. Traxler, Jr., Albert Diaz